## FORD v. PANHANDLE & S. F. RY. CO.

### No. 6189.

Court of Civil Appeals of Texas. Amarillo.

Dec. 3, 1951.

Rehearing Denied Jan. 7, 1952.

Patterson, Tabb & Duncan, Dallas, for appellant.

Lewis Jeffrey, Amarillo, for appellee.

MARTIN, Justice.

Appellant, W. C. Ford, Sr., sued appellee, Panhandle & Santa Fe Railway Company, for damages alleged to have been sustained by appellant when his automobile was struck on the right rear fender by appellee's train on a crossing in Levelland, Texas. In his fourth amended original petition the appellant alleged that "he reduced the speed of his automobile and after looking to his right and to his left and seeing no train approaching proceeded to cross defendant's track." The petition further alleged five specific grounds of primary negligence on the part of appellee but on

conclusion of the evidence these grounds were abandoned by appellant and request made that the cause be submitted to the jury solely on the issue of discovered peril. Upon this issue, the jury reported as hopelessly deadlocked and the court, on motion of appellee, withdrew the case from the jury and entered judgment for appellee.

Appellant contends that the pleading and the evidence support the issue of discovered peril and brings the cause to this court solely upon the alleged error of the trial court in withdrawing this issue from the consideration of the jury and granting appellee's motion for judgment.

■ The correctness of the trial court's action in withdrawing the cause from the jury and entering judgment for appellee must be tested by viewing the evidence bearing thereon in the light most favorable to appellant's cause under the elements of discovered peril. These elements are: (1) "The exposed position of the plaintiff, brought about by his negligence, (2) the actual discovery of defendant's agents of his perilous situation in time to have averted, by the use of all the means at their command, commensurate with their own safety, injury to him, and (3) the failure thereafter to use such means." Martin v. Texas & N. O. R. Co., Tex.Civ.App., 236 S.W.2d 567.

The collision occurred about ten o'clock in the morning, the weather was clear and visibility good and no obstructions were near the crossing. Appellee's fireman on the left side of the engine, testified that he concluded appellant's automobile would probably not stop when it was "20 to 25 feet" from the crossing and at that time the engine was "approximately 90 to 100 feet" from the crossing. At this point, the fireman called to the engineer to apply the brakes in emergency, which the engineer did. The engineer testified that when he made the brake application the engine was "about 30 or 40 feet" from the crossing. However, appellant carefully avoids the use of the statement "90 feet" and uses only "100 feet from the crossing" as one of his measuring sticks. Appellant further contends vigorously in his brief

that, "the jury might have concluded from other evidence that, in fact, the realization came sooner." In support of this appellant cited "unobstructed view of the crossing * * * good visibility * * * fact that fireman was looking in that direction * * * continued sounding of the bell and whistle * * * and that the fireman saw that he continued the approach unaware that the train was approaching the crossing."

■ Appellant's contention above, whereby he seeks to lengthen the distance between the locomotive and place of collision and thereby show the lapse of more time for appellee's agents to have averted the injury to appellant, is a tacit admission that the fireman's distance of "90 to 100 feet," eliminates the issue of discovered peril. But, when appellant seeks to refute the fireman's testimony as to time of discovery of appellant's peril by placing the train in a distant position by use of inferences he brings himself within the rule shown in Texas & N. O. R. Co. v. Brannen, Com.App., 140 Tex. 52, 166 S.W.2d 112, 114, "the crew in charge of the train had the right to assume that the driver of the car would not negligently drive on the crossing in front of the train, * * *." Panhandle & S. F. Ry. Co. v. Napier, Com. App., 135 Tex. 314, 143 S.W.2d 754, 756, "It has often been held that discovery of a car approaching a railroad crossing at a time when its occupant is not in danger, is within itself not sufficient to raise the issue." The whole contention of appellant "would, in effect, require operators of trains to slow up or stop every time they saw an automobile approaching a railroad track in the manner of this one, and that quite without regard to its speed when discovered, or its proximity to the crossing". The fireman's testimony is the only evidence of any probative value upon the issue as to the time of actual discovery of appellant's position of peril by the agents of the appellee and is a proper basis for the trial court's entry of judgment for appellee.

The locomotive had to travel 90 or 100 feet to the crossing and since its speed was from 17 to 22 feet per second, approxi-

mately only five seconds elapsed from the time the fireman discovered appellant's peril until the crossing was reached. Approximately only two seconds elapsed from the time the engineer applied the emergency brake until the crossing was reached. Into the five second period of time must be crowded the fireman's discovery and realization of appellant's peril, conversion of this realization into action by telling the engineer to "bighole it," the engineer's hearing of the instruction and assimilation of the same in terms of manual action and application of the emergency brake. During this period of time the appellant was traveling from a distance of approximately 25 feet to the crossing and over the same to the spot where the right rear fender of the car was struck by appellee's train. Taking appellant's established rate of speed at approximately 22 feet per second places any collision of the train and car within the time range of only two or three seconds.

We are not confined, however, to mathematical calculations for revelation as to the time element involved in the collision. The testimony of appellant and of his witness, J. P. McAuley, reveals, without controversy, that either the safety of appellant or his injury was strictly within the field of split-second timing. Appellant testified, "I thought that I would beat it, but I lacked only 3 or 4 feet." McAuley testified that he didn't think a collision would occur, because he thought the Ford car would get over the crossing before the train got there. Under this testimony it is not even apparent that certain injury to the appellant was a readily discernible fact at the time. Nor does the above testimony reveal that sufficient time elapsed after discovery of appellant's peril for appellee's agents to have averted the injury to him.

J. P. McAuley, a witness for appellant, further narrows the elapsed time for action by appellee's agents after discovery of the peril of the appellant. McAuley testified that appellant slowed down before he reached the track. Appellant is certainly bound by this testimony of his own witness and under this proof the fireman would not have been at fault had he wholly failed to ask the engineer to apply the brakes to the train under the logical assumption that appellant was slowing down his automobile to stop at the crossing. Under the most favorable light to appellant, the fireman certainly could not be at fault until the realization came to him that the appellant, although slowing down, still intended to drive upon the crossing.

■ The judgment of the trial court should be sustained on the uncontroverted evidence as to the time element involved in the cause as such testimony reveals that there was not sufficient time after appellee's agents discovered appellant's position of peril to have averted injury to the appellant by the use of all means at their command.

Appellant's witness, L. R. Black, was not qualified to testify as an expert in the cause but in the light of the trial court's final disposition of this case, the court exercised sound discretion in admitting the testimony of appellant's witness Black, who was purportedly an expert as to the speed of trains and the distance required to stop trains such as the one shown in this cause. The weight to be given Black's testimony as an expert may be determined by his testimony as to the method he used to determine how fast a train was running, to wit: "I count my poles or time my clock" and by the further fact that he "quit his job when he was promoted to engineer." Since the trial court withdrew the case from the jury and granted judgment for appellee, it is apparent that the court correctly attached no weight to the testimony given by Black as an expert. It is also a sound assumption that the trial court, in submitting the cause to the jury, recognized that an unfavorable verdict on appellant's issue of discovered peril would in all likelihood terminate the case and that in the alternative there still rested with the court the power to grant judgment notwithstanding the jury's verdict.

Considerable contention is made, based principally on the testimony of Black as an expert, that the brakes were not applied to the train until after the collision.

Black's testimony is that the 20 car train weighing 895 tons and traveling at an initial speed of 12 to 15 miles per hour would have come to an emergency stop in about 40 or 45 feet. The engineer's undisputed testimony is that he applied the emergency brake about 30 or 40 feet from the crossing. If we accept Black's testimony as an expert, it is evident that the train could not have been stopped under the emergency braking prior to hitting the appellant's automobile. Apparently the trial court correctly accepted the fireman's testimony that an emergency application of the brakes would have stopped the train in approximately 400 feet considering the length of the train, its speed and other elements. At least, it is evident from the undisputed testimony that the 20 car train, but for the collision, would have been stopped with the rear passenger coach at the station beyond the crossing. It is also undisputed that the train actually did come to a stop with only 7 cars of the 20 car train past the crossing. It is uncontroverted that the brakes were actually applied to the train. No weight should be given to Black's purported expert testimony as to the effects of emergency braking of appellee's train as this testimony developed no evidence of any probative value. It would be a sound conclusion that the trial court correctly took the engineer's uncontroverted testimony that he applied the emergency brakes approximately 30 or 40 feet from the crossing, thus stopping the train by the time 7 cars had passed over the crossing. This testimony is further corroborated by the testimony of the fireman as shown of record.

The appellant in his brief concedes the continued sounding of the bell and whistle on the train to the point of collision. An examination of the time element and the uncontroverted evidence in the cause reveals that the fireman and engineer of the train used all the means at their command upon actual discovery of appellant's perilous situation to avert injury to him. The judgment of the trial court is affirmed. Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880; Texas & P. Ry. Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68; Martin v. Texas & N. O. R. Co., Tex.Civ.App., 236 S.W.2d 567, error refused; Parks v. Airline Motor Coaches, Inc., 145 Tex. 44, 193 S.W.2d 967.