## W. C. FORD, SR., V. PANHANDLE & SANTA FE RAILWAY COMPANY.

No. A-3523. Decided October 1, 1952.
Rehearing overruled December 3, 1952.
(252 S.W., 2d Series, 561.)

*Patterson, Tabb & Duncan,* and *William Duncan,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in affirming the judgment of the trial court, in withdrawing the case from the jury and granting defendant's motion for judgment, when plaintiff's pleadings and evidence required submission to the jury of the doctrine of discovered peril. Turner v. Texas Co. 138 Texas 380, 159 S.W. 2d 112; White v. White, 141 Texas 328, 172 S.W. 295; Massingill v. Henwood, Tr., 138 Texas 317, 159 S.W. 2d 118.

*D. E. Magee,* of Levelland, and *Lewis Jeffery,* of Amarillo, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Petitioner, as plaintiff, sought damages of respondent, as defendant, for injuries sustained in a railroad crossing collision. The case went to trial before a jury on pleadings by the plaintiff charging that the collision was proximately caused by various negligent acts of the defendants, with additional general allegations charging the defendant with liability under the doctrine of discovered peril. At the conclusion of the evidence the plaintiff waived all grounds of liability and recovery save that of discovered peril; and, having overruled the defendant's motion for instructed verdict, the trial judge submitted the case to the jury on issues of discovered peril and certain defensive issues of unavoidable accident and sole proximate cause. In the course of time the jury reported that it was unable to agree on answers to the submitted issues, whereupon the defendant renewed its motion for an instructed verdict or in the alternative that the case be withdrawn from the jury and judgment be rendered for the defendant. The motion was based upon the absence of evidence raising the issue of discovered peril. The motion was granted, the jury was discharged, and judgment was rendered for the defendant. The judgment was affirmed by the Court of Civil Appeals. 246 S.W. 2d 233.

In this Court the defendant seeks to sustain the judgments of the courts below upon the following grounds: (1) That the doctrine of discovered peril is not available to a plaintiff as a ground of recovery in the absence of proof of primary negligence on the part of the defendant; and (2) that there was no evidence raising the issue of discovered peril.

**1** In support of its first proposition defendant cites the cases of Terry v. English et al., 130 Texas 632, 112 S. W. 2d 446, and Texas Pacific Coal & Oil Co. et al v. Wells et al., 151 S. W. 2d 927, 932, (affirmed 140 Texas 2, 164 S. W. 2d 660). Neither of the cited cases support the proposition asserted. On the other hand, there are many decisions of the courts of this state sustaining a recovery based on the doctrine of discovered peril where there was present in such cases no issue of primary negligence on the part of the defendant. As an example, see Sisti et al v. Thompson, 149 Texas 189, 229 S. W. 2d 610. Obviously this must be so. If one discovers another in a position where injury in all reasonable probability will be inflicted unless the discoverer uses ordinary care to prevent the injury, the duty to use such care arises, and that wholly without reference to the character of the discovered's conduct before the discovery.

The defendant lays particular stress upon the absence of evidence to show that the defendant discovered the plaintiff's peril in time to have avoided injuring him and its absence to show that the defendant failed to use all the means at hand to avoid injuring him. To put it another way, the defendant says that the evidence in the record before us shows conclusively and as a matter of law that the defendant did not discover plaintiff's peril in time to avoid injuring him and that it also shows conclusively and as a matter of law that the operatives of defendant's train used all the means at hand, after discovering the plaintiff's peril, to avoid injuring him.

**2** The quantum of proof required of the plaintiff on these elements of discovered peril in order to entitle him to have them submitted to the jury was such facts and circumstances as taken together with all reasonable inferences therefrom constituted some evidence of probative force of their existence. White et al v. White et al, 141 Texas 328, 172 S. W. 2d 295; Stevens et al v. Karr, 119 Texas 479, 33 S. W. 2d 725; FitzGerald v. Hull et al, 150 Texas 39, 237 S. W. 2d 256.

**3** In determining whether the plaintiff discharged this burden we must view and interpret the evidence in the record in its most favorable light to the plaintiff, disregarding all evidence and the inferences therefrom favorable to the defendant. Cartwright et al v. Canode, 106 Texas 502, 171 S. W. 696; White v. White, supra.

The collision occurred at about 10:25 o'clock in the morning

in the City of Levelland where the defendant's track crosses Avenue H. The plaintiff was driving north on Avenue H and the train, with six loaded and fourteen empty cars, approached from the east. It was a clear day, visibility was good, and the view of the crossing was unobstructed.

It was the theory of the plaintiff that the sun shining from the east prevented his seeing the train until the front wheels of his automobile had crossed the first rail at which time, discovering the nearness of the train bearing down upon him, he stepped on the gas in the belief that he "would beat it."

We first inquire whether the evidence shows conclusively that the train operatives exercised ordinary care in the use of all means at hand to avoid injuring the plaintiff. Or, on the other hand, are there such facts and circumstances in the record, viewed most favorably to the plaintiff, which with all reasonable inferences therefrom, entitled the plaintiff to have this issue submitted to the jury?

4 Much of the evidence was conflicting, and it must be borne in mind that it was the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony. It was their province also to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses. Texas Law of Evidence by McCormick and Ray, page 3, Sec. 3; Austin Fire Ins. Co. v. Adams-Childers Co., Texas Com. App., 246 S. W. 365; Gulf, C. & S. F. Ry. Co. v. Higginbotham, Tex. Civ. App., 173 S. W. 482 (no writ history).

5 Defendant's fireman, who was on the left side of the engine, testified that he first saw the plaintiff's automobile when the train was some 300 feet from the crossing, and that he estimated the speed of the automobile at that time to be 15 miles per hour and the speed of the train to be 10 to 15 miles per hour; that the speed of the automobile remained unchanged; that because of the slow speed it was making he at first thought the automobile would stop but concluded it "probably would not stop" when the automobile was "20 to 25 feet" from the crossing and the pilot of the engine was "approximately 100 feet" therefrom; that at this point he was "aware that the car in question was in a position of peril" and "that if something didn't happen" they "were going to hit that car"; that at this point he called to the engineer to apply the emergency brakes —"big-hole it"—which the engineer did; that when he told the

engineer to "big-hole" it he thought the plaintiff "was in a position which he could not get out of by himself"

When the fireman discovered the perilous position of the plaintiff it was his duty to warn the engineer and to call for the application of the emergency brakes. It then became the duty of the engineer to apply the emergency brakes. It is not suggested that this could not have been done with safety to the train. The fireman and the engineer testified that the brakes were applied, the fireman testifying that they were applied at "approximately 100 feet" and the engineer testifying that they were applied at 30 to 40 feet of the crossing, but the jury was under no obligation to believe them. "A jury will not be bound by the statement of defendant as to when he discovered the danger of plaintiff and as to the efforts made to avoid the injury." Southland Greyhound Lines, Inc. v. Richards, Tex. Civ. App., 77 S. W. 2d 272, 273, (writ dism.) ; Quanah, Acme & Pacific Ry. Co. v. Eblen, Tex. Civ. App., 55 S. W. 2d 1060, 1065 (writ refused).

6  A simple analysis of the testimony of the fireman will suffice to demonstrate the adequacy of the evidence to take to the jury the issue of failure to apply the emergency brakes. The fireman's testimony would support a conclusion by the jury that at the time the automobile was 300 feet from the crossing traveling toward the crossing at a rate of speed of 15 miles per hour the train was also 300 feet from the crossing traveling toward the crossing at a rate of speed of 15 miles per hour, a rate of speed confirmed by the engineer, the conductor and two brakemen. His testimony and that of a disinterested witness is that the speed of the automobile remained unchanged. If there were no application of the brakes of the train so that its rate of speed also remained unchanged, the train and the automobile would have arrived at the crossing at almost the same instant. They did arrive there at almost the same instant. It follows that this was a strong circumstance that the brakes of the train were not applied and the speed of the train was not diminished before it reached the crossing. But there are other supporting circumstances also. One nearby witness watching the approach of the train heard no noise indicating an application of emergency brakes and observed no appreciable diminution of speed of the train before it reached the crossing. The plaintiff saw no sliding wheels but the wheels just "kept rolling on," although the conductor testified that the application of

emergency brakes would cause the wheels on the empty cars to slide. The fireman testified that if the emergency brakes had been applied when he first saw the plaintiff the train could have been stopped before reaching the crossing, a distance of 300 feet, and yet the train was not stopped until the engine had gone 365 feet beyond the crossing, another circumstance to bolster a conclusion by the jury that the brakes were not applied before the train reached the crossing.

We also hold from an analysis of the evidence that a jury issue was raised on the question of whether the discovery of the plaintiff's peril was made in time to avoid injury to him. In this connection, the plaintiff insists that there are sufficient circumstances in evidence to support a conclusion by the jury that plaintiff's dangerous position was discovered by the fireman at a greater distance than 100 feet from the crossing. We find it unnecessary to determine this question.

**7** As has already been observed the fireman testified that he discovered the plaintiff's peril when the train was "90 to 100 feet" or "approximately 100 feet" from the crossing. Interpreted most favorably to the plaintiff this testimony would support a conclusion by the jury that at the time of the discovery the train was 100 feet from the crossing. True, the fireman also testified that at the time of the discovery the automobile was 20 to 25 feet from the crossing, but in the light of his testimony, already noticed, as to original distances of the train and automobile and their respective rates of speed, the jury could have rejected the fireman's estimate of the distance of the car from the crossing and could have concluded that the automobile at the time of the discovery was also 100 feet from the crossing, and could still have accepted the fireman's testimony that at such time he realized that the plaintiff was in a position of peril. Gulf, C. & S. F. Ry. Co. v. Higginbotham, supra. Since the automobile was hit on the rear fender and lacked only 3 or 4 feet of crossing the track in safety, the jury could reasonably have concluded that an application of the emergency brakes at any time before the train reached the crossing would have afforded the necessary time for the automobile to pass over the track unharmed. The duty rested on the train operatives to slacken the speed of the train even if it could not be stopped before reaching the crossing. Texas & P. Ry. Co. v. Robinson, 4 Tex. Civ. App. 123, 23 S. W. 433 (writ refused); St. Louis S. W. Ry. Co. of Texas v. Ford, 237 S. W. 655; Galveston Electric Co. v. Antonini, Tex. Civ. App., 152 S. W. 841,

845 (writ refused). As was said in the Ford case, a case closely analogous on the facts: "The undisputed evidence shows that the wagon was struck near its rear end, and Ford was whipping his team to escape the threatened collision. This warrants an inference that a delay of even one or two seconds might have enabled Ford to escape. Such a delay might have been caused had the engineer used more diligence in applying his brakes." Even allowing for normal reaction time it yet appears that a prompt application of the emergency brakes might have allowed the plaintiff's automobile to pass over the track in safety.

But the defendant says—and this in spite of the very positive testimony of the fireman heretofore quoted—that the fireman could not have discovered the plaintiff in a position of peril at the time he said he did because the plaintiff was not at such time in a position of peril since the automobile could have stopped before going upon the tracks. To support its position the defendant relies upon language from the cases of Panhandle Ry. Co. v. Napier, 135 Texas 314, 143 S. W. 2d 754, and Parks v. Airline Motor Coaches, 145 Texas 44, 193 S. W. 2d 967.

The opinion in the Napier case, written by Commissioner German and adopted by this Court, contains the following language: "plaintiff could not have come into a position of peril until he reached approximately twenty feet of the engine, when it became too late for him to apply his brakes to prevent a collision." There is a statement in the opinion in the Parks case, a case in which a motor bus hit a pedestrian, that the defendant's driver owed the deceased no duty of care *"unless he knew*[1] that Parks was going to attempt to cross the highway in the path of the bus and thus place himself in a position of peril." These expressions from the Napier and the Parks cases are not the first such expresisons to creep into this Court's opinions in our judicial history.

As early as 1900 we find this Court declaring in an opinion by Associate Justice Williams in the case of Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Texas 199, 59 S. W. 533, that trainmen owed no duty of care to one approaching a railroad track *unless they knew* that he would undertake to cross the track. In the opinion it was said: "A person walking negligently along a railroad track in front of a moving train will surely be hurt unless the train stops, or he gets out of the way. In a sense he

---

[1] All emphasis supplied.

may be said to be in danger, but those controlling the train are not required to assume that, by his negligent failure to act, he will remain in danger. *It is only when they have realized that he cannot or will not get out of the way that the duty of averting a collision arises.*" This language was quoted with approval in an opinion written by Justice Brown in 1906 in the case of Houston & T. C. Ry. Co. vs. O'Donnell, 99 Tex. 636, 92 S. W. 409, 410. All four of the cases—the Shetter, the O'Donnell, the Napier and the Parks—express the same legal philosophy, which may be said to be that no duty of care toward one on or approaching a railway track or roadway rests upon trainmen or operatives of vehicles until injury to such an one appears certain.

This philosophy as expressed in the Shetter and O'Donnell cases was examined and pointedly and specifically repudiated in 1907 by Chief Justice Gill of the Court of Civil Appeals in an opinion in the case of International & G. N. Ry. Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442. Chief Justice Gill characterized the language quoted from the Shetter case and approved in the O'Donnell case as "loose expressions in cases from courts of the highest authority" and said that the cases actually intended to hold that for a duty of care to one on or approaching a railroad track to arise "it is not requisite that the engineer must know that disaster is inevitable unless he himself can avert it It is enough if he knows that the person injured was in a place of danger from which he probably could not or would not extricate himself in time." Then with respect to the fact situation before the Court—that of a deaf man on a railroad track being hit by a train, which, by way of emphasis of what was said, was the identical fact situation as in the O'Donnell case—Chief Justice Gill wrote: "In a legal sense and in point of fact it is accurate to say that the peril of one in Munn's position consisted of his ignorance, for there was no time up to within a few feet of the train when he might not have saved himself had the knowledge of its approach been borne in upon his senses." The Supreme Court refused a writ of error in the Munn case.

After the decision in the Munn case, and until it was reasserted in the language quoted from the Napier and Parks cases, the opinions of appellate courts in Texas reflected a singular unanimity in rejection of the "certain injury" philosophy in the doctrine of discovered peril. See Houston & T. C. Ry. Co. v. Finn, 101 Texas 511, 109 S. W. 918; International & G. N. R.

Co. v. Tinon, Tex. Civ. App., 117 S. W. 936, 938 (writ refused) ; Gehring v. Galveston Electric Co., Tex. Civ. App., 134 S. W. 288 (no writ history) ; Galveston Electric Co. v. Antonini, Tex. Civ. App., 152 S. W. 841, 845 (writ refused) ; Higginbotham v. Gulf, C. & S. F. Ry. Co., Tex. Civ. App., 155 S. W. 1025 (no writ history) ; Gulf C. & S. F. Ry. Co. v. Higginbotham, Tex. Civ. App., 173 S. W. 482 (no writ history) ; Gulf, C. & S. F. Ry. Co. v. Phillips, Tex. Civ. App., 183 S. W. 806 (no writ history) ; Galveston-Houston Electric Ry. Co. v. Patella, Tex. Civ. App., 222 S. W. 615, 627 (writ dismissed) ; Hines v. Arrant, Tex. Civ. App., 225 S. W. 767 (writ refused) ; Galveston H. & S. A. Ry. Co. v. Wagner, Tex. Com. App., 298 S. W. 552; Short v. Nehi Bottling Co., Tex. Civ. App., 145 S. W. 2d 684 (no writ history) ; Barnes v. Price, Tex. Civ. App., 226 S. W. 2d 657 (writ refused). It will be well to notice the reasoning of the courts in a few of the cases.

In an opinion by Chief Justice Gaines in the Finn case, the Supreme Court undoubtedly adopted the rule laid down in the Munn case by saying: "The case was submitted to the jury solely upon the ground of discovered peril, and, the jury having found that the servants of the company discovered that the plaintiff was in a perilous position, *or about to enter such position,* in time to have avoided the injury by the means at their command, we cannot reverse the judgment if there be any evidence to justify the verdict."

In the Gehring case the Court condemned a charge that did not impose a duty of care toward one near railroad tracks unless it appeared that "he would certainly be injured unless the operatives of the car would prevent it." The Court asked: "When * * * the proximity of deceased to the track was such as to excite in his (the motorman's) mind an apprehension that the deceased would surely be struck if he continued walking as he was, and when it was apparent that he did not hear the ringing of the gong, could the motorman delay action until such time as he realized that the deceased would certainly be injured unless he prevented it?" The Court answered: "We think not. * * * *It is the knowledge by the operatives of the danger of injury and not the certainty of injury, that calls forth the action.*"

In the first Higginbotham case the plaintiff was hit by a train while he was apparently absorbed in trying to get his horses off the railroad track. With reference to the duty owed to the plaintiff by the train operatives, the Court said: "It was

not necessary in order to charge them with the duty of using the means at their command to prevent injury to the deceased, that they should have believed or thought it certain that deceased would not get out of the way of the train. * * * If the circumstances reasonably indicated to said operatives the probability of his not getting off of the track; they were not authorized to speculate on whether he would or would not get off, and take the risk of killing him when it was in their power to prevent injuring him. If the doctrine of discovered peril only applied when the operatives of a train were certain that the person injured was in peril of life and took no steps to save him when his injury could have been prevented, the necessary proof in every case in which discovered peril is a ground of recovery would show a case of murder or criminal negligence. Such proof is not necessary."

In the case of Hines v. Arrant the defendant railroad requested a special charge on discovered peril which would have exculpated it of liability unless "the engineer actually knew that plaintiff would attempt to cross the track in front of the train." The Court of Civil Appeals said: "The charge requires the jury to find too much in order to reach the conclusion that the engineer should use the facilities at his hand to stop the train. He could not in the very nature of things actually know what was in the mind of the appellee as the latter was driving toward the crossing. It was his duty, if he discovered the appellee approaching the crossing and could reasonably infer that he would likely undertake to cross the track, to use the facilities at hand to prevent a collision, either by stopping or by lessening the speed of his train, or by giving some warning of the train's approach. *He had no right to wait until he was absolutely certain that the traveler was going into a place of danger before taking the proper steps to avoid injuring him.*"

In the Wagner case, a case in which a pedestrian was killed while running across a track in front of a train, the Court, speaking through Commissioner P. J. Harvey said: *"In order for a person to be in peril, it is not necessary that bodily injury will certainly be suffered by him. He is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him.* Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course and probably will pursue it to the end, then, in such event, the second person is held to have knowledge of the peril of the other."

A few other cases illustrating from an application of the law to the facts that certainty of injury and knowledge thereof was not made the basis for applying the doctrine of discovered peril, are Verble v. Schaff, Texas Com. App., 251 S. W. 1023; Houston, E. & W. T. Ry. Co. v. Kopinitsch, 114 Texas 367, 268 S. W. 923; Houston, E. & W. T. Ry. Co. v. Sherman, Tex. Com. App., 42 S. W. 2d 241; Texas & N. O. R. Co. v. Krasoff, et al, 144 Tex. 436, 191 S. W. 2d 1; Sisti et al v. Thompson, 149 Texas 189, 229 S. W. 2d 610. Other such cases might be added ad infinitum.

The language quoted from the Napier and the Parks cases should be disapproved only after the most careful re-examination. A reading of the opinions will leave no doubt but that both cases were correctly decided.

Commissioner German in his opinion in the Napier case cites no authority for his statement that one approaching a railroad track is never in a position of peril until he reaches a point where he cannot stop short of the track. The only case cited as supporting the language quoted from the Parks case is the case of Texas & P. Ry. Co. v. Brown, 142 Texas 385, 181 S. W. 2d 68. The first case cited in the Brown case in support of the holding there made is the Shetter case, which, on the point under discussion, had long since been repudiated as a precedent.

To give our sanction to the rule advocated by respondent would be virtually to destroy the doctrine of discovered peril. It would mean that a duty to act never arises until there is certainty of injury although there is every reason to believe that injury probably will occur. It would also mean that no duty to act arises unless the person in peril is unable to extricate himself therefrom although there is full realization that he is unlikely to do so. Such is not the basis of the humanitarian doctrine of discovered peril.

If no vehicle were in a position of peril until it reached a point where it was impossible to stop it short of collision, the time for acting would rarely be sufficient to impose a duty to act. If a pedestrian were never in a position of peril until he took the last step placing himself in front of a moving train or vehicle, then he could never recover under the doctrine of discovered peril because until he took the last and final step it lay in his power not to take it. If a person on a railroad track,

physically able to move, were never in a position of peril, however inattentive, until it was too late to remove himself from the path of a train bearing down upon him, then the duty of the trainmen to act to prevent injury would never arise until the last second before impact although they realized that the person was unaware of the train's approach.

Whether approached from the standpoint of ruling legal precedents in this state or from the standpoint of sound and logical analysis, we conclude that defendant's proposition cannot be sustained.

When the fireman first discovered the approach of the automobile he had a right to assume that the driver would stop it before reaching the crossing. Both ordinary care for his own safety and Article 6701d, Sec. 86 (d) V.A.C.S. required that he stop it. But the testimony of the fireman was some evidence of probative force that he knew and realized that the plaintiff would not likely stop but would probably continue to pursue his course until he drove upon the track. It was also some evidence of probative force that he knew and realized that the continued pursuit by the plaintiff of his dangerous course would in all probability lead to his injury unless, as agents of the defendant, he and the engineer acted to prevent the injury. We have demonstrated that the evidence raised the issue that this knowledge and realization came at a time when by the exercise of ordinary care in the use of means at hand, i.e., a prompt application of the emergency brakes, the injury might have been prevented. So realizing, it became the duty of the fireman and of the engineer to act promptly in applying the brakes although the plaintiff, if he had become aware of the train's approach, might conceivably have stopped his automobile before reaching the track.

In view of the likelihood of another trial, we add that in our opinion the trial judge did not abuse his discretion in admitting the testimony of the witness Black. The objections urged to his testimony go to its weight rather than to its admissibility.

The judgments of the Court of Civil Appeals and of the trial court are reversed and the cause is remanded to the trial court for retrial.

Opinion delivered October 1, 1952.

MR. JUSTICE SHARP, joined by Justice Garwood, dissenting.

The majority opinion has misapplied the doctrine of discovered peril to the facts of this case. A brief summary of the issues raised by the pleadings and the evidence introduced will be helpful in considering this case.

Petitioner sued the Panhandle & Santa Fe Railway Company for damages alleged to have been sustained by him when his automobile was struck on the right rear fender by respondent's train on a crossing in Levelland, Texas. Petitioner alleged that "he reduced the speed of his automobile and after looking to his right and to his left and seeing no train approaching proceeded to cross defendant's track." Petitioner further alleged five specific grounds of primary negligence on the part of respondent.

Respondent alleged that petitioner was negligent: (1) in failing to keep a proper lookout for the train; (2) in failing to listen for the approach of the train; (3) under the facts and circumstances existing at the time, in failing to stop before driving upon the railroad track; and (4) that petitioner was negligent, as a matter of law, in that he violated and failed to comply with Subdivisions c and d of Section 86 of Article 6701d of Vernon's Texas Civil Statutes.

Upon the conclusion of the evidence petitioner abandoned all of the grounds of primary negligence, and made the request of the trial court that the cause be submitted to the jury solely on the issue of discovered peril. Upon this issue the jury reported that it was hopelessly deadlocked, and the court upon motion of respondent withdrew the case from the jury and entered judgment for respondent, because the evidence did not raise the issue of discovered peril.

There is no contention made that the employees operating the train did not give the statutory signals for the crossing as required by Article 6371, Vernon's Annotated Civil Statutes, and that the train was operated at an excessive and dangerous rate of speed. The essential facts are that the collision occurred about ten o'clock in the morning. The weather was clear and the visibility good, and no obstructions were near the crossing. The train, consisting of an engine and 20 cars, some loaded and some empty, approached the crossing, moving westward, at a speed of 12 or 15 miles per hour, with bell and whistle sounding, the fireman looking out the left-hand-side window and the en-

gineer looking out the right-hand-side window. Petitioner was approaching the crossing in his automobile from the fireman's side, and when the engine was approximately 300 feet from the crossing the fireman saw an automobile approximately 300 feet from the crossing, traveling at a speed estimated at 15 miles per hour. The view between the train and the automobile remained open and unobstructed, and the fireman watched the automobile until it passed from his view in front of the engine, immediately before the impact. The fireman thought the automobile would stop, until it reached a location "20 to 25 feet from the crossing." The fireman thought that the automobile could still have stopped before going on the crossing, but was uncertain whether it could clear ahead of the train, and he called for the emergency brakes when he estimated the engine was "approximately 90 to 100" feet from the crossing. At that time the engineer had just turned loose the whistle cord, and the bell was continuously ringing. The engineer immediately applied the emergency brakes. The engineer testified that when he received the information from the fireman to apply the emergency brakes the train was traveling around 12 to 15 miles per hour, and was about 30 to 40 feet from the crossing; that when he received the warning from the fireman that an automobile was approaching the track, he immediately put the brakes in emergency, and that there was nothing more that could have been done to avoid the collision.

The doctrine of discovered peril is generally applied to various types of cases, such as automobile accident cases, in suits against street railway companies for negligence causing injuries to persons on the streets, and in suits against railroad companies for injuries to persons on the railroad tracks or at highway crossings. Whether or not the doctrine applies depends on the facts of each case, and it would be impossible to expect complete consistency in all the statements contained in the many cases relating to this doctrine. We are here dealing with a collision caused by the driver of an automobile undertaking to beat an approaching train over a public highway crossing, and it would serve no useful purpose to discuss cases involving facts unlike the facts in this case.

Our courts have repeatedly held that the discovery of a person's peril *in time* is one of the essential elements in the establishment of liability under the doctrine of discovered peril. In the recent case of Schumacher Co. v. Posey, 147 Texas 392, 215 S. W. 2d 880, the authorities bearing upon this question

were analyzed, and in applying the rule it was held that the doctrine of "discovered peril" or "last clear chance" means certainly that the last clear chance must be a clear one. In passing upon this question certain factors may be considered, viz., such as the rapidity of the action just before the collision, and also as to the thought, appreciation, mental direction, and lapse of sufficient time on the part of the operators of the train to act effectually upon the impulse to save another from injury. In the course of the opinion this Court said:

"As has been so frequently said, this doctrine is a humanitarian one, and evidence convicting a person of the rather grave fault of neglecting to act to avoid injuring another whom he has discovered in a position of peril must not be imputed or presumed. Parks v. Airline Motor Coaches, (145 Texas 44, 193 S. W. 2d 967) supra. If the doctrine were raised where the events were so instantaneous and the actions of the parties so clearly impulsive and instinctive as they were here, it would be present in practically every situation where motor vehicles collide. Terry v. English, (130 Texas 632, 112 S. W. 2d 446) supra. *The doctrine must certainly not be allowed to extend that far.*" (Emphasis mine.)

There is no contention made that the operators of the train were guilty of negligence in any respect, and petitioner rests his claim solely on the ground that they did not use all means at hand to prevent the collision after they had discovered petitioner's peril. It is undisputed that if the facts do not bring this suit within the scope of the doctrine of discovered peril, petitioner has no cause of action. In this case the facts clearly show that petitioner, who lived at Levelland, was familiar with the crossing, that he drove upon it right in front of a moving train, which was within a few feet of such crossing within his plain view, and that he did this in violation of law and without regard for his welfare or safety. The train could not leave the track to avoid hitting him, and petitioner, according to his own testimony, when he realized his perilous condition, willingly took a chance to beat the train over the crossing.

Automobiles and railroads are public necessities, and rules and laws have been enacted to regulate their use. The operation of railroads is essential to the welfare of the country, and the law authorizes railroads to operate their trains in such way as to meet their duty to the public and as their necessities may require. Highways and railroad tracks frequently cross each other, and the dangers arising therefrom have become a matter

of grave public concern. In 1947 the Legislature enacted Article 6701d, known as the Uniform Act Regulating Traffic on Highways, which expresses the public policy of this State to prevent collisions at railroad crossings. Section 86 of that Act provides: "Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when: "* * * (c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard; (d) An approaching train is plainly visible and is in hazardous proximity to such crossing." Section 143(a) of that Act provides: "It is a misdemeanor for any person to violate any of the provisions of this Act unless such violation is by this Act or other law of this State declared to be a felony."

Petitioner was driving his automobile in the ordinary manner as he approached the crossing. There was nothing to prevent him from seeing the approaching train. He could have stopped just before going on the track, and the train crew had a right to assume that petitioner would not violate the law by not stopping his automobile before it reached the railroad track, and that he would not negligently drive in front of the train. At the speed it was going, the automobile could have been stopped in a very few feet. Railroad trains are naturally heavy, and cannot be stopped so quickly.

The rule for allowing recovery of damages under the doctrine of discovered peril is exacting. The doctrine is not applied where the facts show that the emergency is so sudden that there is no time in which to avoid the accident. The evidence here shows that petitioner approached the railroad track from the fireman's side, and nothing obstructed his view of the approaching train. The testimony shows that the fireman called for the engineer to apply the emergency brakes, which the engineer testified were immediately applied. The engineer had control of the brakes, and he testified that everything was done to avoid the accident. The burden was upon petitioner to prove that the operators of the train actually discovered and realized the perilous condition of petitioner in time to have avoided the collision by the use of all means at their command, consistent with their own safety and the safety of the train. The burden was upon petitioner to establish this fact. That the operators were guilty

of violating those humane principles will neither be imputed nor presumed, but such guilt must be proved by competent evidence. In order to sustain a recovery it must be shown that the operators actually discovered petitioner and realized his perilous condition in time to have averted the collision. Fort Worth & D. C. Ry. Co. v. Shetter, 94 Texas 199, 59 S. W. 533; Schumacher Co. v. Posey, 147 Texas 392, 215 S. W. 2d 880; Parks v. Airline Motor Coaches, 145 Texas 44, 193 S. W. 2d 967; Texas & N. O. Railroad Co. v. Grace, 144 Texas 71, 188 S. W. 2d 378; Texas & Pacific Ry. Co. v. Brown, 142 Texas 385, 181 S. W. 2d 68; Texas & N. O. Ry. Co. v. Brannen, 140 Texas 52, 166 S. W. 2d 112, 113; Texas & Pacific Ry. Co. v. Breadow, 90 Texas 26, 36 S. W. 410; Turner v. Texas Co., 138 Texas 380, 159 S. W. 2d 112; Galveston, H. & S. A. Ry. Co. v. Price, Tex. Com. App., 240 S. W. 524; Baker v. Shafter, Texas Com. App., 231 S. W. 349; Panhandle Ry. Co. v Napier, 135 Texas 314, 143 S. W. 2d 754; Martin v. Texas & N. O. Ry. Co., 236 S. W. 2d 567, writ refused.

The majority opinion questions the soundness of the rule that has prevailed in this State for many years, and particularly announced in the cases of Fort Worth & D. C. Ry. Co. v. Shetter, 94 Texas 199, 59 S. W. 533; Houston & T. C. Ry. Co. v. O'Donnell, 99 Tex. 636, 92 S. W. 409; Panhandle Ry. Co. v. Napier, 135 Texas 314, 143 S. W. 2d 754; Parks v. Airline Motor Coaches, 145 Texas 44, 193 S. W. 2d 967. In the Shetter case, supra, in dealing with liability under the doctrine of discovered peril, this Court reviewed the holding in the Breadow case, and announced the following rule:

"A person walking negligently along a railroad track in front of a moving train will surely be hurt unless the train stops or he gets out of its way. In a sense he may be said to be in danger, but those controlling the train are not required to assume that, by his negligent failure to act, he will remain in danger. It is only when they have realized that he can not or will not get out of the way that the duty of averting a collision arises. Certainly it is at least equally true that trainmen are not bound to assume that a person not on the track will get on it, where it would be negligent and dangerous for him to do so, and, as they would not be bound to assume it, a jury could not properly find that they knew it would be done, in the absence of proof of knowledge."

The language quoted above from the Shetter case was approved by this Court in the O'Donnell case, and the rule an-

nounced by this Court in those two cases has been consistently applied since then. Many cases are cited to support the contention that the rule announced above should either be modified or repealed, and it would take too much space to review the facts and holdings in each case cited for that purpose. We will, however, briefly review the facts involved in some of the leading cases cited, in order to show that the decisions in those cases are not applicable here.

It is contended in the majority opinion that this Court in the case of Houston & T. C. R. R. Co. v. Finn, 101 Texas 511, 109 S. W. 918, overruled the rule announced in the Shetter and the O'Donnell cases, and followed in many cases decided since then. Now, let us look at the facts of some of the leading cases relied upon, and see if this Court intended to overrule the holding in the Shetter and O'Donnell and other cases. The essential facts involved in the Finn case are quoted from the opinion as follows:

"The plaintiff had occasion to pass between two railroad tracks of the defendant company, which was in common and general use by the public as a passway. As he entered upon the way he looked for trains, and discovered a passenger train coming out of the depot, in an opposite direction from that in which he was going, on one of the tracks; he saw no train on the other track. Seeing, as he testified, steam issuing in a considerable volume from the engine of the approaching train, in order to avoid it, he swerved from the direct course, and, approaching the other track, he was struck by a stock car, which was being propelled backwards on the other track, and was knocked down and injured."

It was held in that case that the facts justified the submission of the issues of negligence after discovery of his peril by those operating the switch-engine. In view of the facts involved in that case, which are not similar to the fact involved in this case, the court held that the issue of discovered peril was raised. The same members of the Court who decided the Shetter and O'Dannel cases were members of the Court at the time the Finn case was decided, and there is no mention in the way of criticism or otherwise of the opinions rendered in the Shetter and O'Donnell cases.

The case of Galveston, H. & S. A. Ry. Co. v. Wagner, 298 S. W. 552, is also cited as a ground for overruling the rule announced by this Court in the Shetter and O'Donnell cases. The

facts of that case disclose that Miss Wagner was postmistress at Kingsbury, and it was part of her duties to deliver and receive mail to and from the pasenger trains of the railroad at the depot. At the time she was struck by the passenger train she was hurrying to the depot to deliver the mail to an incoming passenger train. The following quotation from the opinion will show that the facts in that case are dissimilar to the facts in this case:

"At the time the fireman first saw the deceased running towards the depot, the engine drawing the train was about 140 feet west of the point where deceased was struck, and was running at a speed of about 20 or 25 miles an hour. From the time the fireman first saw the deceased running towards the depot, he continued to watch her until she ran in front of the engine.

"At no time, from the time the fireman first saw deceased, was any effort made to avert the collision by stopping the train or diminishing its speed, except that the fireman shouted 'Stop.' to the engineer just as the deceased was in the act of stepping upon the track immediately in front of the engine. * * * and he admits having looked at her all the time while she was running towards the track after she had reached a point some 50 feet north of the main track; and testimony from other sources show the mail sack to have been plainly within his view. After the train whistled for the station, as had been stated, the whistle was not sounded or the bell rung at any time before the deceased was struck.

\* \* \* \* \* \* \* \* \* \* \*

"It is believed that, under the facts and circumstances in evidence, it was the province of the jury to determine that the fireman, while he was looking at the deceased running at her utmost speed toward the depot, saw the mail bag in her hands; and knew that it was her duty to deliver the mail bag to the mail clerk on the train, on the south side of the track; and knew that, in an effort to perform that duty, she probably would go upon the track, as she did, and be struck by the train."

There is nothing in that opinion that indicates that it was the purpose of the Court to overrule the holdings of this Court in the Shetter and O'Donnell and other cases.

The case of Higginbotham v. Gulf, C. & S. F. Ry. Co., Tex. Civ. App., 155 S. W. 1025, is also relied upon. The evidence in that case shows that deceased, Higginbotham, was killed by a

passenger train while he was engaged in getting his horses off the railway company's track. The evidence further discloses that those operating the engine could have seen the perilous condition of deceased at a distance of a half or three-fourths of a mile before the train hit him, and that the train was running very fast. *It was further shown that none of the operators of the train testified.* I quote from the opinion of the Court of Civil Appeals the following:

"The undisputed evidence shows that for a distance of one-half to three-fourths of a mile the view from the place at which the deceased was struck down the track in the direction of the approaching train was unobstructed, and assuming that the engineer and fireman were in the position where their duties required them to be, and were looking ahead as their duty required, they necessarily saw deceased upon the track and saw that he was engaged in the effort to get the horses from off the track. The evidence further shows that no warning signal of any kind was given the deceased and no effort was made to slacken the speed of the train until it was within 15 or 20 feet of him. That the train could have been stopped within 100 to 150 yards was shown by the fact that it did stop within that distance after it struck the deceased."

Much stress is laid upon the holding of the Court of Civil Appeals in the case of International & G. N. R. Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442. A brief statement of the facts quoted in the opinion of the Court of Civil Appeals will clearly show that the facts of that case are not similar to the facts of this case:

"The accident which resulted in the death of Madison Munn occurred on March 4, 1905. On that date he was walking in a northerly direction on defendant's main line, a few miles north of Troupe, Tex., and was struck by one of defendant's southbound passenger trains which was a little behind time, and was moving at the rate of about 40 miles per hour. The track was practically straight at that point, and the engine was visible to Munn, and Munn was visible to the engineer, for at least 2,000 feet. Deceased was a deaf mute, and neither saw nor heard the engine until the moment before it struck him. In failing to see the engine in time to save himself he was negligent. The engineer did not know he was a deaf mute, but actually saw him walking in the center of the track about the distance named, and continued to see him walking on the track, and apparently neither seeing nor hearing the engine until he was struck and

killed. When 600 or 700 feet away, the engineer began to ring the bell to attract his attention. This failing, he immediately began to sound the stock alarm. Munn nevertheless continued his course, and gave no evidence that he was aware of the approach of the train, whereupon the engineer applied the air in the emergency, but at a point so near deceased that there was no hope of saving him by that or any other means at hand. Up to the point where the air was applied in the emergency there was no attempt to slacken the speed of the train."

The Napier case, 135 Texas 314, 143 S. W. 2d 756, involved a collision at a railroad crossing, and in that case this Court said:

"It has often been held that discovery of a car approaching a railroad crossing at a time when its occupant is not in danger, is within itself not sufficient to raise the issue. It is further held that the person causing the injury is not bound to anticipate negligent conduct on the part of the injured person, but has a right to rely upon the assumption that the driver of the car is in possession of his faculties and will be able to control his vehicle so as not to come into a position of peril. Ft. Worth & D. C. Railway Company v. Shetter, 94 Texas 196, 59 S. W. 533; Galveston, H. & S. A. Railway Company v. Price, Texas Com. App., 240 S. W. 524; Texas & P. Railway Company v. Breadow, 90 Texas 26, 27, 36 S. W. 410; Texas & N. O. Railway Company v. Adams, Tex. Civ. App., 27 S. W. 2d 331; Young v. Dallas Ry. & Terminal Co., Tex. Civ. App., 136 S. W. 2d 916; Texas & P. Ry. Co. v. Foster, Tex. Civ. App., 58 S. W. 2d 557."

The principle of the rule just stated was followed in the Grace, Parks, Brown, Brannen, Turner, and Posey cases, as well as in many other cases. No decision of this Court criticizing the holdings in the Shetter and other cases has been cited in support of the majority opinion.

We are not dealing here with a case where some person was stalled or standing or walking on a railroad track, or so near the track that the operators of the train could have discovered and realized his perilous condition in time to have averted the injury to him. In that type of case this Court has uniformly applied the doctrine of discovered peril. The facts of this case clearly show that it does not fall within the scope of the doctrine of discovered peril. The facts also clearly show that petitioner, in the face of Article 6701d, negligently drove his automobile onto the railroad track, in front of a moving train only

a few feet away, which caused the collision. The foregoing Article was enacted to prevent such collisions as the one involved here. That petitioner did not comply with its terms is undisputed. In the recent cases of Lackey v. Gulf, C. & S. F. Ry. Co., 225 S. W. 2d 630, and Texas & N. O. Ry. Co. v. Stewart, 248 S. W. 2d 177, writ denied NRE, Section 86 of Article 6701d was involved, and it was shown in both cases that the injured party failed to comply with the Article; and it was held, as a matter of law, that no recovery should be had. None of the cases cited by petitioner to sustain his contention involves the construction of this Article.

The doctrine of discovered peril, if applicable here, imposed the duty upon the operators of the train to prevent injury to Ford, notwithstanding his own negligence in placing himself in a position of peril, if the operators of the train realized his peril in sufficient time to prevent such injury by the use of all means at their command, consistent with the safety of themselves and of the train. The doctrine should not be applied in this case because the operators of the train did not have sufficient time, after realizing Ford's peril, to prevent the collision. The operators of the train had a right to assume that Ford would bring his automobile to a stop when he was within 15 feet of the crossing, as he was required to do under the provisions of Section 86 of Article 6701d. When Ford reached a point approximately 15 feet from the crossing, the train was approximately 90 to 100 feet from the crossing; and when Ford continued on his course and it was apparent to the operators of the train that he was not going to stop, and they actually realized his peril, they did not have sufficient time within which to stop the train to prevent the collision.

*To hold under the facts involved here that petitioner was entitled to recover damages against respondent would clearly be contrary to the provisions of Section 86 of Article 6701d, and serve to thwart the very purpose for which it was enacted. Such a holding would also be in conflict with the rule which has been consistently applied by this Court in similar cases. Not only would it nullify certain terms of public policy expressed in Article 6701d, and cause operators of trains to slow down or stop every time they saw an automobile approaching a railroad crossing in a manner similar to that described in this case, but it would also for the first time bring cases of this sort under the doctrine of discovered peril. It is quite obvious that such a holding would be most unwise and harmful.*

It is contended, and the majority opinion holds, that the Court of Civil Appeals erred in holding that the witness Black was not qualified to testify as an expert witness. Black's testimony is analyzed by the Court of Civil Appeals, and he testified that the train, consisting of an engine and 20 cars, traveling at a speed of 12 to 15 miles per hour, could have been stopped within 40 or 45 feet. The fireman testified that by an emergency application of the brakes the train would have stopped in approximately 400 feet. It is undisputed that both the fireman and the engineer testified that the emergency brakes were applied, and that the train actually did come to a stop with only seven cars of the train past the crossing. Whether Black's testimony as an expert was admissible may be tested by the character of the method he used to determine how fast the train was running, to wit: "I count my poles or time by the clock," and by the further fact that he "quit his job when he was promoted to an engineer." Unquestionably it is within the sound discretion of the trial corut to pass upon the admissibility of the testimony of a purported expert witness, and if it is admitted the trial court certainly has the authority to consider such estimony in connection with the undisputed testimony of other witnesses who were operators of the train. It is quite manifest that the trial court did not consider the evidence, considered in connection with all the facts and circumstances surrounding the collision, of such character that it would raise the issue of discovered peril. The trial judge felt it his duty to withdraw the case from the jury and render judgment for respondent. The Court of Civil Appeals sustained the holding of the trial court in rendering judgment for respondent, and also held that Black's testimony was inadmissible.

In the Grace case, 144 Texas 71, 188 S. W. 2d 381, this Court, dealing with a similar question, said:

"There is no testimony in the record as to the length of time required to bring a train like the instant one to a stop after the emergency brakes are applied other than the fact that it was brought to a stop in 429 feet. Respondents tendered the testimony of an engineer who had operated a logging train for various lumber companies in East Texas in an effort to supply this fatal defect in their case, but this testimony was properly rejected upon the objection by petitioner that he was not qualified to speak as an expert on that subject. If the jury concluded that the train could have been brought to a stop within 133 feet, the distance which the deceased was ahead of the locomotive

when the fireman admits that he discovered him, such conclusion was based upon pure conjecture."

Both the trial court and the Court of Civil Appeals held, as a matter of law, that under the undisputed facts petitioner was not entitled to recover damages sustained as a result of the collision. The holdings by the trial court and the Court of Civil Appeals are in harmony with the decisions of this Court, and, furthermore, it is clearly shown that the testimony of Black, if admitted, was not of such a nature that it would control the case. For that reason this Court is not justified in reversing and remanding the case. The judgments of the trial court and Court of Civil Appeals should be affirmed.

Opinion delivered October 1, 1952.

Associate Justice Garwood joins in this dissent.

Rehearing overruled December 3, 1952.