**GULF, COLORADO AND SANTA FE RAIL-
WAY COMPANY, Appellant,**

**v.**

**Elliot CLARK, Appellee.**

No. 7222.

Court of Civil Appeals of Texas.

Texarkana.

June 28, 1960.

Kenley, Sharp, Ritter & Boyland, Long-
view, for appellant.

Crawford Parker, Jr., Carthage, for ap-
pellee.

CHADICK, Chief Justice.

This is a suit for damages incurred by
the appellee, Elliot Clark, as a result of
his horse being killed by a train while it
was on the tracks of the appellant, Gulf,
Colorado and Santa Fe Railway Company.
The judgment of the trial court awarding
$200 damages for loss of the horse and

$250 attorney fees, interest cost, etc., is affirmed.

Judgment was entered after trial on the merits before the court. Among the trial judge's findings of fact on primary negligence were findings that the train was being operated at an excessive rate of speed under the circumstances and conditions prevailing at the time it struck the horse; that operating the train at such excessive rate of speed was negligence; that such negligence was the proximate cause of the loss of the horse; and the value of the horse was $200.

Points 1 through 12 require a review of the evidence to determine the questions of the absence or insufficiency of evidence to support the trial court's findings of fact that the train was operated at an excessive rate of speed, and that such excessive speed was negligence and the proximate cause of the death of the horse. There is included therein by means of separate points the phase of the insufficient evidence question that the overwhelming or greater weight of evidence established that the train was not being operated at an excessive rate of speed, that such speed was not negligence, and not the proximate cause of the death of the horse. The appellant groups these 12 points for discussion, and its grouping will be followed here.

After reviewing the evidence in the record it is concluded that there is sufficient evidence to support the judgment of the trial court and that it should be affirmed. After such conclusion no disposition of points of error 13 through 16 would necessitate a different result and they are respectfully overruled without discussion.

▇ In reviewing the no evidence points of error the proof is given the most favorable meaning it is susceptible of conveying in support of the court's finding, and all evidence leading to a contrary conclusion is disregarded. Cartwright et al. v. Canode, 106 Tex. 502, 171 S.W. 696; Biggers et al. v. Continental Bus System, Inc., et al., 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561. But reviewing proof under the insufficient evidence point, including the greater weight and preponderance phase of it, this court must consider the evidence in its entirety and determine whether the evidence in the record is factually strong enough to support the court's findings of fact, and whether the findings are so contrary to the greater weight and preponderance of the evidence as to be clearly wrong and unjust. See Missouri Pac. Ry. Co. v. Somers, 78 Tex. 439, 14 S.W. 779; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Fisher Const. Co. v. Riggs, Tex., 325 S.W.2d 126; and the very valuable discussion of "No Evidence" and "Insufficient Evidence" points of error by Robert W. Calvert in the April, 1960 Texas Law Review (38 Tex. Law Review 361).

For the purpose of review of the "no evidence" points the facts are substantially these: The freight train that subsequently ran down and killed the horse stopped temporarily at the railroad station located "downtown in Carthage", Texas, and at about 9:45 p. m., at night, pulled out going northward on its regular run to Longview. It was cold and raining. That it was stormy also at that time is inferable from testimony that the fence of the lot in which the horse was penned near the railroad right-of-way was down due to a tree being blown over upon it.

The first street north of the station crossed by the main line of the railroad is East Sabine. The second street crossing north is Live Oak. The horse was killed at a point south of the Live Oak crossing near the Negro Methodist Church, where there is "just a pig trail crossing", a distance of between 300–400 yards from the station. In the vicinity of the collision there are several houses and the church near the right-of-way. At the collision point the railroad main line is single track, the right-of-way unfenced and tall weeds

were growing near the track on the side from which the horse suddenly approached and came upon the track in front of the train's engine.

The engineer was familiar with the track and its surroundings in the vicinity of the collision point, as he had, at the time of the accident, been an engineer and worked on this section of the railroad line for over ten years.

The train's engine had headlights making it possible for the engineer to see 800 to 1,000 feet up track in front of the engine, but under the conditions existing the night of the collision the engineer, according to his own testimony, could only see 8 to 10 feet on either side of the railroad at the collision point.

At the time the train struck the horse it had reached a speed of between 15 and 20 miles per hour. Just prior to impact the engineer saw the horse burst out of the weeds on the right-of-way and up a bank onto the tracks about 175 feet in front of the train. Upon seeing the horse would not get off the track the engineer applied brakes and took other procedure to halt the train. The engineer testified the train could not be stopped before striking the horse, though it came to a stop shortly afterwards.

The "no evidence" point can not be sustained. This proof is sufficient, if believed by the trial judge, to establish the fact that the train was being operated at a speed at which it could not be stopped within 175 feet in the downtown section of Carthage in an area adjoining the railroad right-of-way known to the engineer to have a church, residences, and otherwise to be populated, and to have street crossings as well as a "pig trail" crossing, and an unfenced right-of-way grown up in weeds. Proof that the train was thus operated, in such area on a stormy night with limited forward visibility and only 8 to 10 foot side visibility adequately supports the trial judge's findings that the train was being operated at an excessive rate of speed under the circumstances and conditions then existing, and that operation at such speed was negligence and the proximate cause of the damage.

Considering, next, all of the evidence in passing upon all phases of the "insufficient evidence" point, it is proper to relate the additional evidence that the railroad's rules permitted a train speed up to 35 miles per hour in the area of the collision, and that the engine's whistle and bell were giving continuous audible signals for the Live Oak crossing prior to and at the time the train struck the horse, and that the engineer applied braking procedures as soon as he discovered the horse would not cross over but had turned up the track. There are other circumstances favorable to the railroad that must be considered, such as the absence of evidence showing the area is densely populated, other than mention of several houses and the church near the right-of-way, and reference to the station being downtown, that the weight and length of the train is not shown, and the engineer and fireman were keeping a lookout. All the proof contained in the statement of facts has been considered, and as previously stated, it is sufficient to support the judgment and its overwhelming or greater weight and preponderance is not against the trial court's findings and does not establish the converse of the findings as contended by the railroad.

Without going into details, but upon principles already discussed, the evidence has been considered and appellant's points 17 and 18 respecting an attorney's fee will likewise be overruled.

No reversible error appearing, the judgment of the trial court is affirmed.