Opinion issued February 17, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00914-CV

———————————

Charlie Mack Tyre, Sr., Appellant

V.

Braeden Yawn, Appellee



 



 

On Appeal from the 133rd District Court

Harris County, Texas



Trial Court Case No. 2004-04774

 



MEMORANDUM
OPINION

Appellant Charlie Mack Tyre, Sr. appeals a judgment
in favor of appellee Braeden “Brad” Yawn, who operated a family business
providing automobile inspections called “Sticker Shoppe.”  A jury found that Tyre committed fraud and
violated the Texas Deceptive Trade Practices Act by his actions, which
allegedly led to the failure of Sticker Shoppe. 
The jury awarded damages and attorney’s fees.

On appeal, Tyre brings nine issues challenging the judgment: (a) issues 1
and 2 contend that there was an implicit election to recover only under the
DTPA and the judgment should be corrected to reflect this election; (b) issues
3 and 6 contend that the fraud and DTPA claims are barred because they sound
only in contract; (c) issues 4, 5, 7, and 8 challenge the sufficiency of the
evidence to support the jury’s findings of fraud and violation of the DTPA; and
(d) issue 9 challenges the jury’s award of attorney’s fees.  We overrule all of Tyre’s issues except his
complaint about attorney’s fees, and we remand for further proceedings on that
sole issue.

I.                 
Background

Brad Yawn owned and operated an automobile inspection business called
“Sticker Shoppe,” which he established with the help of his father, Rip Yawn.  For convenience, this opinion refers to the
Yawns by their first names.

Much of the critical testimony at trial was disputed.  The parties agree that effective May 1, 2002,
new emissions-testing requirements became a component of automobile inspections
in the Houston metropolitan area.  In
advance of that effective date, the State approved several vendors to supply
inspection stations with testing equipment. 
Worldwide Environmental Products was one such approved vendor.  In February 2002, Worldwide sales
representative Michael Fortier approached Sticker Shoppe and offered to sell it
a compliant emissions-testing machine. 
At Fortier’s invitation, Brad and Rip attended a demonstration of the
machine.  Rip testified that, in addition
to Fortier, three other men attended the initial demonstration, including Tyre,
who in his testimony denied attending the meeting.

Fortier made a follow-up visit to Sticker Shoppe, and on February 6 Brad
signed an application to secure credit to obtain the machine through a lease-purchase.  Upon receipt of the lease application,
Worldwide would ordinarily forward it to a lending institution for a credit
check.  If the purchaser was
creditworthy, Worldwide would receive written approval from the lender, a
purchase order would be issued, and then the sale would be completed and the machine
delivered.  On February 16, 2002,
Fortier returned to Sticker Shoppe, and Brad made a down payment of $1,000.  However, Fortier testified that he told the
Yawns he was still awaiting credit approval for the sale.

Meanwhile, in early February before Brad made the down payment, Worldwide
had engaged Tyre as an independent-contractor sales representative.  For reasons not revealed in the record,
Worldwide’s relationship with Fortier ended in March 2002.  Tyre testified that the Sticker Shoppe
account was assigned to him in April and he was told Sticker Shoppe was having
difficulty securing financing for the machine. 
He also testified that it usually takes from two hours to
two days to complete a credit check to secure financing.

Tyre could only recall going to Sticker Shoppe on one occasion, in April 2002,
at which time he claims that he informed Rip that Sticker Shoppe “did not have
financing available” to purchase the emissions-testing machine.  Nevertheless, he said that at Rip’s request he
laid down large vinyl templates to demonstrate exactly where the machine would
be located.  He also verified locations
for electrical and air connections.

Rip gave a significantly different account of his interaction with
Tyre.  He testified that Tyre came to
Sticker Shoppe twice in April.  The first
time, Tyre arrived without a prior appointment, announced to them he was
replacing Fortier, and said he was there to put down a template to show where
the machine would be delivered.  Rip
testified that Tyre told him that he mailed “certificates of completion.”  These certificates were dated April 4, 2002,
and they indicated that Brad
and Rip had been trained on use of the emissions-testing machinery and
were ready to begin inspections.  Rip testified that during Tyre’s second visit
to Sticker Shoppe, Tyre led Rip to believe that the machine was coming.  Tyre also allegedly told Rip that Worldwide
was misleading customers by saying that the emissions-testing machines were
delayed at the Port of Houston, but that Sticker Shoppe’s machine nevertheless
would be delivered.  An officer of
Worldwide testified that he had no knowledge of delivery
problems involving the Port of Houston.

According to Brad’s testimony, Tyre primarily spoke with Rip when he came
to Sticker Shoppe.  Brad was busy taking
care of customers, but he observed Tyre laying out the template and discussing
with Rip where to place the machine. 
Brad testified that he was approximately 12 to 15 feet away when Tyre
spoke to Rip, and that he had no other conversations with Tyre after April 2002.

          As the May 1, 2002 deadline to begin
emissions testing approached, Rip made “continuous” phone calls to Tyre’s
supervisor at Worldwide, Dick Luther, inquiring about delivery of the machine,
to the point that Luther became agitated and said: “Do not worry about it.  You will be delivered before May 1st.”  Despite these alleged assurances, Rip testified
that on April 29 Luther said that he could not deliver the machine even if
Sticker Shoppe paid cash because there were no machines available.  Worldwide never delivered a machine to
Sticker Shoppe.

          After May 1, 2002, Sticker Shoppe was
no longer able to perform vehicle inspections because it lacked the proper equipment.  Rip testified that from May to August 2002,
he continued trying on a daily basis to obtain an emissions-testing machine.  “A lot of it was on the phone trying to get
them to honor their obligation to deliver the machinery.”  However, Rip said he never called Tyre.  Sticker Shoppe failed to pay its rent
beginning in May 2002 or June 2002 and ceased operations on July 31, 2002.  Sticker Shoppe moved out of its physical
premises on August 30, 2002.

On September 11, 2002, Tyre and his wife signed a lease to rent the same
space from which the Sticker Shoppe previously operated.  Although Tyre’s wife, Kathryn, had previously
worked as a beautician, a child-care provider in a church nursery, and at a
department store, the new business venture was established in her name.  Like Sticker Shoppe, the Tyres’ new business,
called “Sticker Time,” was also a vehicle-inspection shop.  Tyre purchased the same kind of
emissions-testing machine that Brad sought to purchase; however he bought it
from Worldwide at a discounted price because it was considered used.  Tyre also acquired Sticker Shoppe’s telephone
number for Sticker Time’s use.

Sticker Time began doing business on October 1, 2002.  Although the business was in Kathryn’s name,
Tyre testified that he worked there as well, though without salary.  Tyre testified that the seed money for
Sticker Time came from Kathryn’s inheritance, and thus when they divorced in
2007 the business was determined to be her separate property.  Kathryn testified that they began discussing
the idea to start Sticker Time in August or September 2002, that the money used
to start Sticker Time came from the couple’s commingled money, and that Tyre
set up the business in her name to avoid an appearance of impropriety.  She testified: “Well, the main reason was
conflict of interest.  He was afraid that
Worldwide might frown on it or something, you know, because he worked for
Worldwide, and so it might be a conflict of interest.”

          Rip, Brad, and relatives who worked
with them at Sticker Shoppe sued Tyre, Worldwide, and other individuals
associated with Worldwide, alleging breach of contract, fraud, violations of
the DTPA, and other causes of action.  At
the time of trial, only Rip and Brad remained as plaintiffs and Tyre was the
only remaining defendant.  The case was
submitted to the jury on causes of action for fraud and violation of the
DTPA.  The jury found in favor of Tyre as
to all causes of action alleged by Rip, but the jury found in favor of Brad on
all of his causes of action.  The jury
awarded $100,000 for loss of Brad’s business, $15,000 for lost profits, and
attorney’s fees in the amount of $60,000. 
The trial court rendered judgment on the verdict, and Tyre’s motion for new
trial was overruled by operation of law. 
Tyre appeals the judgment in favor of Brad.

II.              
Economic-loss doctrine

In issues three and six, Tyre argues that Brad’s fraud and DTPA claims
fail because they sound only in contract. 
Specifically, Tyre argues that Brad’s injury stemmed from Worldwide’s
failure to deliver an emissions-testing machine pursuant to an alleged
agreement between those parties. 
Therefore, Tyre contends that Brad’s sole remedy was a breach of contract
claim against Worldwide.  See, e.g., Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494–95 (Tex. 1991); Jim Walter Homes, Inc. v. Reed, 711
S.W.2d 617, 617–18 (Tex. 1986); Sterling
Chems., Inc. v. Texaco Inc., 259 S.W.3d 793, 796–97 (Tex. App.—Houston [1st
Dist.] 2007, pet. denied).

This argument invokes the economic-loss doctrine.  But Tyre’s briefing does not show, and we
have been unable to find, where the appellate record reflects that this
complaint was made to the trial court. 
We conclude that these issues have been waived.  See Tex. R. App. P. 33.1(a).

III.          
Sufficiency of the evidence

          In issues four and five (fraud) and
seven and eight (DTPA), Tyre challenges the sufficiency of the evidence to
support the jury’s verdict.

a.     Standards
of review

Legal sufficiency.  When a party who does not have
the burden of proof at trial challenges the legal sufficiency of the evidence,
we consider all of the evidence in the light most favorable to the prevailing
party, indulging every reasonable inference in that party’s favor and
disregarding contrary evidence unless a reasonable fact-finder could not. 
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); City of Houston v. Hildebrandt, 265
S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing Assoc. Indem. Corp. v. CAT Contracting, Inc.,
964 S.W.2d 276, 285–86 (Tex. 1998)).  “If
there is any evidence of probative force to support the finding, i.e., more
than a mere scintilla, we will overrule the issue.”  Hildebrandt,
265 S.W.3d at 27 (citing Haggar Clothing
Co. v. Hernandez, 164 S.W.3d 386, 388 (Tex. 2005)).  Nevertheless, we may not disregard evidence
that allows only one inference.  City of Keller, 168 S.W.3d at 822.  The trier of fact is the sole judge of the
credibility of the witnesses and the weight to give their testimony.  Id.
at 819.  So long as the evidence falls
within the zone of reasonable disagreement, we may not substitute our judgment
for that of the fact-finder.  Id. at 822.

Factual sufficiency.  In
reviewing a factual sufficiency complaint, we must first examine all of the
evidence.  Lofton v. Tex. Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986).  After considering and weighing all the
evidence, we set aside the fact finding only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Mar. Overseas
Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  We may not pass upon the witnesses’
credibility or substitute our judgment for that of the fact-finder, even if the
evidence would clearly support a different result.  Mar.
Overseas Corp., 971 S.W.2d at 407; Hollander
v. Capon, 853 S.W.2d 723, 726 (Tex. App.—Houston [1st Dist.] 1993, writ
denied).

“The jury is the exclusive judge of the facts proved, the credibility of
the witnesses and the weight to be given to their testimony.”  Dyson
v. Olin Corp., 692 S.W.2d 456, 458 (Tex. 1985) (quoting Benoit v. Wilson, 150 Tex. 273, 281, 239
S.W.2d 792, 796 (1951)).  When the trier
of fact is presented with conflicting evidence, it may believe one witness and
disbelieve others.  McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986) (citing Ford v. Panhandle & Santa Fe Ry. Co.,
151 Tex. 538, 542, 252 S.W.2d 561, 563 (1952)). 
The trier of fact is permitted to resolve inconsistencies in the
testimony of any witness.  Id. 
The jury, as the trier of fact, may also draw inferences from the facts
and choose between conflicting inferences. 
Ramo, Inc. v. English, 500
S.W.2d 461, 467 (Tex. 1973).  We cannot
overturn the fact-finder’s ruling unless only one inference can be drawn from
the evidence.  Havner v. E-Z Mart Stores, Inc., 825
S.W.2d 456, 461 (Tex. 1992).

b.    Deceptive
Trade Practices Act claim

          In issues seven and eight, Tyre argues
that the evidence is legally and factually insufficient to support the jury’s
finding that Tyre violated the DTPA because there is no evidence that Tyre
violated a specific provision of the DTPA or that any violation was a producing
cause of damages.  Tyre contends that the
basis for the DTPA claim is his wife’s lease of the property where Brad
operated the Sticker Shoppe, and that this occurred too late in time to be the
basis of Brad’s DTPA claims.  Tyre also
argues that there was insufficient evidence to support the jury’s award of
damages.  

In response, Brad contends that Tyre made actionable misrepresentations
and that he had engaged in an unconscionable course of action, resulting in
lost profits and the ultimate loss of the business value of Sticker
Shoppe.  Brad’s DTPA theory of recovery centers
on Tyre’s actions of bringing the templates to Sticker Shoppe and placing them
on the floor, telling Rip that the machine would be delivered but was delayed
at the Port of Houston, and sending certificates of completion to Sticker
Shoppe.  Although the evidence at trial
was disputed about these allegations, after considering and weighing all the
evidence, we conclude that there is factually sufficient evidence of each allegation
to support a finding by the jury that Tyre committed each alleged act.  The question remaining is whether such acts
can support a DTPA cause of action.

“The DTPA grants consumers a cause of action for false, misleading, or
deceptive acts or practices.”  Amstadt v. U.S. Brass Corp., 919 S.W.2d
644, 649 (Tex. 1996); see Tex. Bus. & Com. Code Ann. § 17.50(a)
(West Supp. 2010); see also id. §§ 17.45(5),
17.46(b).  The elements of a DTPA claim
are: (1) the plaintiff was a consumer; (2) the defendant either
engaged in false, misleading or deceptive acts (i.e., violated a specific
laundry-list provision of the DTPA) or engaged in an unconscionable action or
course of action; and (3) the DTPA laundry-list violation or
unconscionable action was a producing cause of the plaintiff’s injury.  Amstadt,
919 S.W.2d at 649; see Doe v. Boys Clubs
of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995).  In our review of a DTPA claim, we must
liberally construe and apply the statute to promote the underlying goals of the
statute, which include protecting consumers against false, misleading, and
deceptive business practices and unconscionable actions.  See
Tex. Bus. & Com. Code Ann. § 17.44(a)
(West 2002); Latham v. Castillo, 972
S.W.2d 66, 68 (Tex. 1998).

Tyre does not dispute that Brad was a consumer for purposes of the
DTPA.  See Tex. Bus. & Com.
Code Ann. § 17.45(4).  He
asserts that there is insufficient evidence that “any violation proximately
caused” damages to Brad, but he does not present any argument about the
producing cause element of the DTPA claim.  See Tex.
R. App. P. 38.1(i).  Accordingly,
the only issue presented on appeal as to DTPA liability is whether there is
legally sufficient evidence of actionable deceptive practices.

The jury was asked if Tyre engaged “in any unconscionable action or
course of action that was a producing cause of damages” to Brad.  See Tex. Bus. & Com. Code Ann. § 17.50(a).  The instructions defined “unconscionable
action or course of action” as an act or practice which “to a consumer’s
detriment, takes advantage of the lack of knowledge, ability, experience or
capacity of the consumer to a grossly unfair degree.”  Id.
§ 17.45(5).  The jury also found that
Tyre knowingly and intentionally engaged in an unconscionable action or course
of action.

Unconscionability under the DTPA is an objective standard for which
scienter is irrelevant.  See Chastain
v. Koonce, 700 S.W.2d 579, 583 (Tex. 1985); see also Bradford v. Vento, 48 S.W.3d 749, 760 (Tex. 2001); Ins. Co. of N. Am. v. Morris, 981
S.W.2d 667, 677 (Tex. 1998).  To be
actionable under the statutory standard, the defendant must have taken
advantage of the consumer “to a grossly unfair degree,” meaning that “the
resulting unfairness was glaringly noticeable, flagrant, complete and
unmitigated.”  Chastain, 700 S.W.2d at 583–84 (citing Webster’s Third New International Dictionary 1002
(1976)).  This determination is made “by
examining the entire transaction and not by inquiring whether the defendant
intended to take advantage of the consumer or acted with knowledge or conscious
indifference.”  Id. at 583.

Here, Tyre told Rip in April 2002 that a machine would be delivered to
Sticker Shoppe but was delayed at the Port of Houston.  It is undisputed that without delivery of an
emissions-testing machine in time for installation prior to May 1, 2002,
Sticker Shoppe would be unable to perform inspections, the mainstay of its
business, beginning on that date.  Tyre
himself testified that financing for the machine had not been secured, and for
that reason Worldwide was not planning to deliver the machine.  The evidence also showed that Tyre knew that
Brad was expecting Worldwide to deliver the machine, but Tyre nevertheless
misrepresented that the machine would be delivered, knowing that it would not
be.  Excluding any consideration of
Tyre’s subjective motives, the jury could have reasonably concluded that Tyre’s
intentional misrepresentations, under circumstances that objectively
jeopardized the viability of Brad’s business, were grossly unfair and therefore
unconscionable.

Our conclusion in this regard is compelled by the Texas Supreme Court’s
holding in Latham v. Castillo, 972
S.W.2d 66 (Tex. 1998), in which the DTPA claimants alleged that their attorney
misrepresented that he had filed and was actively prosecuting their medical
malpractice claim.  In fact, limitations
had run and no claim had been filed.  Id. at 67.  The Court held these alleged
misrepresentations supported a DTPA claim alleging unconscionable actions
because the clients had presented some evidence that they were taken advantage
of to a grossly unfair degree.  Id. at 68–69.  The Castillo
opinion emphasized that the allegations about the attorney’s conduct were not
based upon claims of merely negligent misrepresentations but instead alleged
“deceptive conduct” of the kind the DTPA was enacted to curtail.  See id.
at 69.  We conclude Brad’s allegations against
Tyre are indistinguishable in this respect. 
Accordingly, we hold that the evidence is legally and factually
sufficient to sustain the jury’s finding that Tyre committed an unconscionable
act under the DTPA.  Because of this
conclusion, we need not analyze whether the evidence is also sufficient to
sustain the jury’s liability finding on Brad’s alternative DTPA theory based
upon alleged false, misleading, or deceptive acts or practices.  

c.      Damages

Finally, Tyre contends there is no objective evidence to support the
jury’s findings that the market value of Sticker Shoppe was $100,000 and its
lost profits were $5,000 per month.  He
argues that the only evidence in this regard was speculative testimony by Rip.

Rip testified that prior to his experience with Sticker Shoppe, he ran
another family-owned vehicle-inspection business in Liberty, Texas, with Brad
and another of his sons, Derrick.  Rip
explained that he had become aware of an opportunity to acquire a similar
business that ultimately became Sticker Shoppe, and that that he had “set up” Derrick
with the business in Liberty and the new Sticker Shoppe in Brad’s name.  Based on this experience and his knowledge
about sales volumes, Rip opined that that Sticker Shoppe’s fair market value
was between $140,000 and $175,000. 
Although the business was set up in Brad’s name, Sticker Shoppe was a
family-run business.  A business owner is
permitted to testify about the fair market value of the business if there is a
basis for the knowledge, and we conclude that the trial court did not abuse its
discretion by permitting Rip’s testimony in this circumstance.  See,
e.g., Ramex Const. Co. v. Tamcon Servs.
Inc., 29 S.W.3d 135, 138 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Laprade v. Laprade, 784 S.W.2d 490, 492
(Tex. App.—Fort Worth 1990, writ denied). 
Rip based his opinion on sales volume and his knowledge of the business,
which included his experience in starting Sticker Shoppe and in operating
another vehicle inspection business. 
Other evidence adduced at trial showed that Tyre himself placed a value
of $100,000 on his wife’s similarly situated business in the exact same
location.

With respect to lost profits, there is no requirement that the loss be
susceptible of exact calculation.  See Holt
Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992).  “The amount of the loss must be shown by
competent evidence with reasonable certainty,” and at a minimum, “opinions or
estimates of lost profits must be based on objective facts, figures, or data
from which the amount of lost profits can be ascertained.”  Id.  Here, Brad introduced evidence of the income
tax returns and sales records from Sticker Time, the business that took Sticker
Shoppe’s place.  The tax returns and
testimony from Tyre’s ex-wife established that Sticker Time was paying Tyre
family members in excess of $60,000 annually, or over $5,000 per month, in
salary.

Based on this evidence, we hold that the evidence is legally and
factually sufficient to support the jury’s award of $100,000 as the fair market
value of Sticker Shoppe and $15,000 as the amount of profit Brad lost over the
course of three months.  

*        *        *

We overrule issues seven and eight, holding the evidence legally and
factually sufficient to support the jury’s DTPA findings.  Because those findings support the judgment regardless
of whether the fraud claim also was supported, we need not reach issues four
and five relating to the jury’s fraud findings. 


IV.          
Election of remedies

In his first issue, Tyre contends that the judgment should be corrected
to reflect an election of remedies.  “[W]here
the prevailing party fails to elect between alternative measures of damages,
the court should utilize the findings affording the greater recovery and render
judgment accordingly.”  Birchfield v. Texarkana Mem’l Hosp., 747
S.W.2d 361, 367 (Tex. 1987).  There is no
dispute that this is effectively what the trial court did, considering that
attorney’s fees were recoverable under the DTPA and the parties dispute whether
fees were also recoverable on the fraud claim. 
Moreover, Tyre presents no argument that the judgment actually reflects
a double recovery in violation of the one-satisfaction rule.  Accordingly, no reformation of the judgment
is necessary to effect an election of remedies. 
See, e.g., Star Houston, Inc. v. Shevack, 886
S.W.2d 414, 423 (Tex. App.—Houston [1st Dist.] 1994) (holding that reformation
of judgment to effect election of remedies is required when prevailing party
fails to elect and trial court fails to render judgment utilizing findings
affording greater recovery), writ denied,
907 S.W.2d 452 (Tex. 1995).  We overrule
issue one.

Tyre’s second issue contends that because the judgment was implicitly
entered on the jury’s DTPA findings, Brad’s fraud claim is moot and should not
be considered on appeal.  Tyre suggests
that because the DTPA claims afforded a greater recovery than the fraud claim,
and judgment was rendered accordingly, Brad should be deemed to have elected a
DTPA recovery to the exclusion of any possibility of fraud recovery, despite
the jury’s findings and even if we were to sustain Tyre’s challenges to the
DTPA claims on appeal.  That logic
depends upon a flawed premise.  “An
election of remedies does not occur when a plaintiff mistakenly pursues a
remedy which does not exist as a matter of law.”  Fina
Supply, Inc. v. Abilene Nat’l Bank, 726 S.W.2d 537, 541 (Tex. 1987).  A recovery in a trial court on a DTPA claim
does not render a fraud claim irrevocably moot. 
Tyre presents no argument or authorities to support this issue.  See Tex. R. App. P. 38.1(i).  We overrule issue two.

V.              
Attorney’s fees

Finally, Tyre complains about the attorney’s fee award to Brad because
there was no segregation of fees with respect to claims pursued on behalf of
other plaintiffs and against other defendants dismissed before trial, claims
unsuccessfully pursued on behalf of Rip, claims for which there was no
independent entitlement to attorney’s fees, and various damages models that
were not accepted by the jury.  During
the charge conference, Tyre objected to the failure to segregate attorney’s
fees, preserving his complaint for appellate review.  See Tex. R. App. P. 33.1(a)(1); Green Int’l, Inc. v. Solis, 951 S.W.2d
384, 389 (Tex. 1997).

Here, Brad asserted a claim for fraud, for which attorney’s fees are not
ordinarily recoverable.  The record also
reflects that at least some of the evidence presented in support of the fees
request was done to advance other claims for which fees are not recoverable in
this case.  For example, the billing
records reflect legal research done on the application of the statute of frauds
to breach of contract claims.  This issue
that does not relate to Brad’s DTPA claim and because breach of contract was
not submitted to the jury, attorney’s fees for such work would not be
recoverable here.  Also, Brad did not
segregate attorney’s fees that pertained to his claims from attorney’s fees
that pertained to Rip’s claims.  On
cross-examination, Brad’s attorney was asked: “Have you taken any steps to try
to dissect the work you did regarding these parties that are no longer in the
case from the work you did regarding my client [Tyre] here?”  The attorney responded: “No, sir, I don’t
have to.  I’m not required to by law.”

To the contrary, the law does impose upon the party seeking a recovery of
attorney’s fees the duty to segregate those fees incurred in pursuit of a claim
for which fees are not recoverable. 
“[I]f any attorney’s fees relate solely to a claim for which such fees
are unrecoverable, a claimant must segregate recoverable from unrecoverable
fees.”  Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex. 2006).  “Intertwined facts do not make tort fees
recoverable; it is only when discrete legal services advance both a recoverable
and unrecoverable claim that they are so intertwined that they need not be
segregated.”  Id. at 313–14.  

Brad’s unsegregated evidence of attorney’s fees for the entire case constitutes
some evidence of what the segregated amount should be.  Accordingly, we sustain issue nine and remand
for further proceedings on the issue of Brad’s claim for attorney’s fees.  See Hong Kong Development, Inc. v. Nguyen, 229
S.W.3d 415, 455–56 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (“When an
appellate court sustains a challenge that attorney’s fees were not properly
segregated, the remedy is to sever that portion of the judgment awarding
attorney’s fees and to remand the cause for the issue to be relitigated.”).

Conclusion

          No duplicative remedies were awarded
in this case, so election of remedies was not an issue.  Tyre has not shown that his arguments about
the economic-loss doctrine were made in the trial court, so any error in that
regard was not preserved.  We conclude
the evidence is legally and factually sufficient to support the jury’s finding
of an unconscionable act or course of action of the DTPA.  Tyre presented no legal argument that Brad’s
damages were not proximately caused by Tyre’s actions.  However, Brad failed to present evidence of
his attorney’s fees for his DTPA claim, appropriately segregated to eliminate
fees solely attributable to other work performed by his attorney for which no
fee is recoverable.  Accordingly, we
reverse the judgment as to Brad’s claim for attorney’s fees and remand for
further proceedings on that sole issue. 
The remainder of the judgment is affirmed.

 

 

 

                                                                   Michael
Massengale

                                                                    Justice


 

Panel consists of Justices Jennings, Alcala, and
Massengale.