**Affirmed and Opinion Filed August 1, 2022**

# S

**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

### No. 05-20-00913-CV

**BRENDA BERKLEY, Appellant**
**V.**
**THE HOUSING AUTHORITY OF THE CITY OF DALLAS, TEXAS-**
**BUCKEYE TRAIL COMMONS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-20-01563-C**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Nowell

Brenda Berkley appeals the trial court's judgment that The Housing Authority

of The City of Dallas, Texas—Buckeye Trail Commons (DHA) is entitled to

possession of an apartment. DHA filed this forcible-detainer action after Berkley's

adult son assaulted his girlfriend at the apartment building when the girlfriend came

to pick up their child. Berkley argues the evidence is legally and factually

insufficient to support the finding that she breached the lease and that the court erred

by admitting evidence of her son's criminal background. We affirm.

**Background**

This action arose out of an incident at the apartment building involving Berkley's adult son, Braznar Berkley (Braznar), and his girlfriend, Larya Sauels. The incident occurred while Berkley was visiting a relative.

According to the police incident report narrative, Officer Michael Slay and his partner were dispatched to a major disturbance at the Buckeye Trail Commons apartment building. They met with Sauels who reported that she was in a dating relationship with Braznar and they had a two-year-old son together. She told officers she went to pick up her son from Braznar's apartment, giving them Berkley's apartment number. Sauels had a flat tire on the way and Braznar did not want her to take the child because she was so late. Her son ran to her when he saw her. She picked him up and went outside into the parking lot to leave. Braznar was upset and took the child out of her arms using an open hand to push her away causing her to stumble. He then went inside, locking Sauels out of the apartment building. She then called police.

Slay testified he responded to the call and met Sauels outside the apartment. Sauels reported that after the assault Braznar went back into the apartment. Slay knew Sauels did not live in the apartment but did not know if Braznar lived there. Slay knocked on the door of the apartment but no one answered. Slay never saw Braznar. Slay issued a citation on Braznar for assault family violence for the incident.

Yvonne Dickinson, the apartment manager, testified that other tenants complained to DHA that Braznar was selling drugs out of Berkley's apartment. Dickinson discussed the complaints about Braznar with Berkley. Berkley indicated he was staying with her occasionally to help her because of her medical condition. Berkley suggested that DHA do something to bar Braznar from the property if there was a problem.

Dickinson explained that the building is a high rise with several units inside. The only way to get in is with a key fob. The key fob is needed to get into the building and into the resident's apartment. Dickinson testified that it is possible for someone to go inside behind someone else, but they instruct residents not to allow that.

Sauels testified that she called Braznar to tell him she was coming to get the child. She went to the high rise and he let her in the building. Braznar was holding the child. He complained about how late she was and that there was no telling what she had been doing. He did not want her to take the child. When she tried to grab the child, Braznar pushed her. She went out the door and was locked out. She then called the police. Sauels did not see Braznar inside Berkley's unit, but he was inside the building when he pushed her. She also testified he knew several people in the building.

Berkley testified that Braznar does not live with her, but he comes over and does things for her like mopping the floor and taking out the trash and checks on her when she is sick or has seizures. She testified that he never stayed with her, never

had a key to her house, and never spent the night. She heard about the complaints about Braznar and told DHA that she could not control him, and they should do something to bar him from the premises if there was a problem. Berkley also explained she was keeping Sauels's son and Sauels would come to her apartment to pick the child up from Berkley. But the day of the incident Berkley was not at home.

The justice court rendered judgment for possession to DHA and Berkley appealed. *See* Tex. R. Civ. P. 510. Following a trial de novo on appeal to the county court, the trial court rendered judgment for possession of the apartment to DHA. *See* Tex. R. Civ. P. 510.11. The trial court did not file findings of fact and conclusions of law.[1] This appeal followed.

## Standard of Review

When findings of fact and conclusions of law are not filed, it is implied that the trial court made all fact findings necessary to support its judgment. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). When the appellate record includes a reporter's record, we review the implied findings under the same sufficiency standards as applied in reviewing the evidence to support a jury's verdict. *See Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam). The

---

[1] Although Berkley filed a request for findings of fact and conclusions of law in the trial court, she does not complain on appeal about the court's failure to file them.

judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford*, 801 S.W.2d at 109.

In evaluating the legal sufficiency of the evidence to support a finding, we credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally insufficient when (a) evidence of a vital fact is completely absent; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). However, evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Serv. Corp. Intern. v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

In reviewing the factual sufficiency of the evidence, we review all the evidence and will set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016). "[T]he jury is the sole judge of the credibility of witnesses and the weight to be given their testimony." *Golden Eagle Archery, Inc., v. Jackson*, 116

S.W.3d 757, 761 (Tex. 2003). It is up to the jury "to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses." *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952).

## Discussion

### A. Sufficiency of the Evidence

We discuss Berkley's first and third issues together. In her first issue, she argues that the trial court erred in construing the phrase "other person under the Tenant's control," as defined in the lease, and that under the lease as properly construed Berkley is not responsible for Braznar's conduct. In her third issue, she argues the evidence is legally and factually insufficient to show that she breached the lease.

Under the terms of the lease, violation of the tenant obligations is grounds for termination of the lease. The tenant obligations section provides in relevant part:

> 12. . . . Tenants, their family members, guests and other persons under the control of Tenant are obliged:
>
> . . . .
>
> (t) To refrain from and cause Tenant, family/household members, guests and other persons under Tenant's control to refrain from any drug-related or violent criminal activity or other activity that threatens others, including but not limited to:
>
> 1. Engaging in any activity, including physical and verbal assaults, that threatens the health, safety or right to peaceful enjoyment of DHA's premises by other Tenants or their guests, DHA employees, agents of DHA, or other persons;

2. Engaging in any violent criminal activity or other activity that threatens the life, health or property of other Tenants or their guests, DHA employees, or other persons. Engaging in any drug-related criminal activity on or off DHA premises; for purposes of the Lease, the term "drug-related criminal activity" means the illegal manufacture, sale, distribution, use, possession, storage, service, delivery or cultivation of a controlled substance.

3. A criminal conviction is not needed to demonstrate serious violations of the Lease.

Berkley argues on appeal that these provisions of the lease are against public policy, citing property code section 92.052(a). TEX. PROP. CODE § 92.052(a). This section deals with a landlord's duty to repair or remedy conditions on the property if notified in writing by a tenant. However, subsection (b) provides that the landlord does *not* have a duty to repair or remedy a condition caused by "a guest or invitee of the tenant." *Id*. § 92.052(b)(4). Thus, the statute does not appear to support Berkley's argument that she cannot be responsible for her guest or invitee. In any event, Berkley waived the defense by failing to plead and obtain findings supporting it.

An allegation that a provision in a contract is void, unenforceable, or unconscionable is a matter in the nature of an avoidance and must be pleaded. TEX. R. CIV. P. 94 (noting a party must affirmatively plead any matter constituting an avoidance or affirmative defense); *Parks v. Developers Sur. & Indem. Co.*, 302 S.W.3d 920, 923–24 (Tex. App.—Dallas 2010, no pet.); *see also Phil. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 485 (Tex. 2016) (tenant "carries the burden of

pleading and proving the contract's invalidity as an affirmative defense"). If a party fails to plead the affirmative defense, it is waived. *Parks*, 302 S.W.3d at 924.

Berkley did not plead that the lease was void as against public policy in her answer nor was the issue mentioned during the trial in the county court. Berkley first raised the defense in her motion for new trial, which is insufficient to preserve it for review. *See Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.) (affirmative defense may not be raised for the first time in motion for new trial); *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (affirmative defense raised for first time in motion for new trial was not preserved for review).

The lease defines the phrase "Other person under the Tenant's control" as "a person who, although not staying as a guest in the unit, is, or was at the time of the activity in question, on the premises because of an invitation from the Tenant."[2] The term "guest" is not defined in the lease. Therefore, we apply the common meaning of the term in interpreting the lease. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A "guest" is commonly known as "a person who is invited to visit or stay in one's home."[3]

---

[2] The phrase "Family members" is also defined in the lease but family members must be named in the lease application and there is no evidence Braznar's name was included in the application.

[3] *Guest*, Britannica.com, https://www.britannica.com/dictionary/guest (last visited July 19, 2022); *see also Guest*, Merriam-Webster, https://www.merriam-webster.com/dictionary/guest (last visited July 19, 2022) ("a person entertained in one's house" or "a person to whom hospitality is extended").

There is evidence Braznar visited Berkley and assisted her with housework. He checked on her because of her medical condition. Berkley kept his child, Sauels knew to pick the child up at the apartment, and on the day of the incident, Sauels knew to meet Braznar at the apartment building to pick up her child. Sauels testified that Braznar let her inside the building and was holding the child. The assault occurred inside the building.

The record indicates the trial court believed that Berkley allowed Braznar to be at the apartment and gave him access. While there was evidence he knew other people in the building who could have allowed him to enter, the trial court was the sole judge of the credibility of the witnesses and the weight to be given to the testimony. *City of Keller*, 168 S.W.3d at 819.

The evidence is legally and factually sufficient for the trial court to reasonably conclude that Braznar was Berkley's guest and that he engaged in violent criminal activity or other activity that threatens the life, health or property of other Tenants, their guests, DHA employees, or other persons. The court could also have reasonably believed from the evidence that Braznar, even if not staying as a guest, was on the premises because of an express or implied invitation from Berkley.

Berkley argues DHA was required to prove that the activity threatened the right to peaceful enjoyment of the premises by other tenants or other persons and failed to do so. However, subsection 12(t) of the lease requires tenants and their guests to refrain from "any drug-related or violent criminal activity or other activity

that threatens others." The nonexclusive list of such activities includes engaging in "violent criminal activity or other activity that threatens the life, health or property of . . . other persons." The trial court could have reasonably concluded from the evidence that Braznar's physical assault of Sauels inside the building threatened the health of Sauels and the child.

We conclude that the trial court did not err by construing the lease and that the evidence is legally and factually sufficient to support the trial court's implied findings necessary to support its judgment. We overrule Berkley's first and third issues.

## B. Evidentiary Ruling

In her second issue, Berkley argues the trial court abused its discretion by admitting evidence of Braznar's criminal record. During cross-examination of Berkley, DHA questioned her about Braznar's criminal record regarding illegal drugs. Berkley objected but the trial court overruled the objection.

We review the trial court's ruling admitting or excluding evidence for an abuse of discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (per curiam). To preserve error in the admission or exclusion of evidence, a party must timely and specifically object to the evidence and obtain a ruling. TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a); *Bay Area Healthcare*, 239 S.W.3d at 235. Admission of evidence is deemed harmless if the objecting party allows the same or similar evidence to be introduced without objection. *Bay Area*

*Healthcare*, 239 S.W.3d at 235; *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984).

Defendant's exhibit one was admitted without objection. The exhibit is an incident report from the Dallas Police Department with the 911 call transcript. The incident report includes Braznar's prior arrests and criminal history. The trial court also heard evidence, without objection, that other tenants complained to DHA that Braznar was selling drugs out of Berkley's apartment. Because the same or similar evidence was admitted without objection, we conclude the trial court did not abuse its discretion by admitting evidence of Braznar's criminal record. We overrule Berkley's second issue.

## Conclusion

Berkley has failed to show reversible error in the trial court's judgment. Accordingly, we affirm the trial court's judgment.

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

200913f.p05

–11–

# S

## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRENDA BERKLEY, Appellant

No. 05-20-00913-CV      V.

THE HOUSING AUTHORITY OF
THE CITY OF DALLAS, TEXAS-
BUCKEYE TRAIL COMMONS,
Appellee

On Appeal from the County Court at
Law No. 3, Dallas County, Texas
Trial Court Cause No. CC-20-01563-
C.

Opinion delivered by Justice Nowell.
Justices Myers and Osborne
participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellee THE HOUSING AUTHORITY OF THE
CITY OF DALLAS, TEXAS-BUCKEYE TRAIL COMMONS recover its costs of
this appeal from appellant BRENDA BERKLEY.

Judgment entered this 1st day of August, 2022.